IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DAVID M. WASANYI,

       Plaintiff,

v.                                    Case No. 2:23-cv-00575

ARAMARK SERVICES, INC. and
BRITANY HILL,

       Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is Aramark Services, LLC's ("Aramark") Motion to Dismiss (ECF No. 24).

*I.    RELEVANT PROCEDURAL HISTORY*

On August 25, 2023, Plaintiff, a former prisoner,[1] filed a complaint under 42 U.S.C. § 1983 against Aramark and its former employee Britany Hill ("Hill"). (ECF No. 1). The complaint alleges that, on or about June 6, 2023, while housed as a "Work Release Inmate" at the Charleston Correctional Center and Jail ("CCCJ"), a facility operated by the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), Plaintiff was directed to complete one month of community service hours by working in the kitchen at

---

[1] After filing the instant complaint, Plaintiff was transferred to the St. Marys Correctional Center and Jail, then the Parkersburg Correctional Center and Jail, and was then released from custody and is now residing in Inwood, West Virginia.

the CCCJ before he would be permitted to begin outside employment. (*Id.* at 1, 3). According to the complaint, Aramark is the contracted food service provider for the WVDCR, operated the kitchen at CCCJ, and "[was] allowed to subcontract inmates to perform kitchen duties." (*Id.* at 2). The complaint further alleges that Defendant Hill was a supervisor for Aramark at the CCCJ location. (*Id.* at 1, 4).

Plaintiff alleges that he started working in the kitchen on June 8, 2023 and was trained by other inmates concerning the operations of the kitchen. (*Id.* at 3). Two days later, on June 10, 2023, Plaintiff discovered unsanitary conditions in the "dish washer machine," which was out of the appropriate detergent, and the "dish pit area," which had evidence of mold growth. (*Id.*) Plaintiff reported these conditions to the Aramark supervisor on duty that day (it appears that this was not Defendant Hill, who was not working that day), who told him and other inmates to clean the areas. (*Id.*) Later that morning, when Plaintiff and then shift supervisor, Mr. Carols, went to locate cleaning chemicals, they discovered that there was no dish detergent, so Plaintiff set up a back-up "three sink system" to wash all the plates and utensils and was instructed to clean the dish pit area with bleach. (*Id.*) Plaintiff further advised Mr. Carols to "get degreaser (Wash and Walk) for cleaning the floor, it was slippery." (*Id.* at 4).

The complaint further alleges that, despite the admonition concerning the slippery floor, Plaintiff and two other inmates fell on the floor in the kitchen between June 14 and June 23, 2023. (*Id.*) However, the complaint does not allege that Plaintiff suffered any actual injury from his alleged fall.

Plaintiff further alleges that Defendant Hill returned to work during the week of June 23, 2023, and that she came to Plaintiff and called him "a cocky inmate who had been meddling in the operations of the kitchen while [she] was away." (*Id.*) Plaintiff

2

further alleges that, when Hill asked him why he was handwashing dishes, he told her that the dish washer was out of detergent, so he couldn't use it. (*Id.*) Plaintiff further contends that Hill brought him a container of hand soap and told him it could be used in the dish washer, despite an express statement on the label cautioning against using it in dish washers. (*Id.*) Thus, Plaintiff continued to use the three-sink washing system for five days when Hill brought him a single can of detergent. (*Id.*)

The complaint further appears to allege that, about a week later, Plaintiff advised Hill that the dish washer was again running low on detergent. (*Id.*) The next day, July 11, 2023, Hill told Plaintiff to work in the dish pit, which he did, in addition to performing other duties. (*Id.*) However, at about 5:00 a.m., Plaintiff was asked by another inmate worker to clean an egg skillet in the cooking area (which is apparently separate from the dish pit and dish washing area). Plaintiff refused, stating that it was not one of his duties. (*Id.*) When Hill overheard this conversation, she "ordered [Plaintiff] to leave the dish pit area and go to the cooking area and wash the skillet." (*Id.* at 5.) Plaintiff continued to advise Hill that the work release inmates, the largest group of diners at the facility, were finishing their meals and there would be a lot of dishes to do. (*Id.*) Hill then allegedly yelled at Plaintiff, using "vulgar language" and "accused [him] of being a nuisance in her kitchen" and "doing nothing other than sitting on a chair waiting to be served breakfast." (*Id.*)

Plaintiff further alleges that, a few minutes later, he was pulled out of the kitchen by correctional staff and was subsequently written up for "violations of rules of conduct" for being "argumentative and disrespectful" over his refusal to clean the egg skillet. (*Id.*; *see also* ECF No. 1-1 at 2, Ex. A). Plaintiff further claims that he was ultimately dismissed from kitchen duty "two days past the day [he] was supposed to have completed [his]

3

community service" and was required to repeat another 30 days of community service. (*Id.* at 6). He also contends that, before his dismissal on July 11, 2023, Hill was allegedly meeting with other inmates in her office, which he speculates was "to create a trigger and cover-up retaliation against [him] for pointing out the unhygienic conditions and unsafe conditions in Aramark kitchen" and "with intent of making [him] redo 30 days of community service to [lose] income [he] would have gained from working in the community for the [m]onth of August, 2023." (*Id.* at 5-6).

Based upon these allegations, the complaint asserts a claim of "deliberate indifference to a safe work environment" against Aramark and Hill, which would arise, if at all, under the Eighth Amendment of the United States Constitution. (*Id.* at 3-5). Against these same defendants, Plaintiff also alleges a claim of retaliation in violation of the First Amendment based upon his complaints concerning allegedly unhygienic food service and work area conditions. (*Id.* at 5-6). The complaint seeks various forms of declaratory and injunctive relief and monetary damages from the defendants. (*Id.* at 6-7).

On December 13, 2023, Aramark filed the instant Motion to Dismiss (ECF No. 24) and Memorandum of Law in support thereof (ECF No. 25), asserting that Plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted and for failure to exhaust the required administrative remedies concerning the claims therein. On January 8, 2024, Plaintiff filed an Objection to the Motion to Dismiss (ECF No. 27) and a Memorandum in support thereof (hereinafter "Plaintiff's response") (ECF No. 28). On January 16, 2024, Aramark filed a reply brief (ECF No. 29). Then, on January 29, 2024, without seeking leave of the Court to do so, Plaintiff filed an unauthorized sur-reply (ECF No. 30). This matter is ripe for resolution.

## II.    STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss.  *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief."  *Id.*  Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense."  *Id.*

5

"[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

### III.    DISCUSSION

A.    The complaint fails to state a plausible claim for relief against Aramark.

The vehicle for Plaintiff's federal constitutional claims is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (emphasis added); *Will v.*

*Mich. Dept. of State Police*, 491 U.S. 58, 60 (1989); *Rendall-Baker v. Kohn*, 547 U.S. 830, 838 (1982).  Because Aramark - a private corporation - is a contracted food service provider for the WVDCR - a state agency with oversight of the CCCJ - the deliberate indifference standard is applicable to the conduct of Aramark and its employees.  *West v. Atkins*, 487 U.S. 42 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law").

However, "[a] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original) (extending "municipal liability" requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), to § 1983 liability of private corporations); *see also Motto v. Corr. Med. Servs.*, Case No. 5:06-cv-00163, 2007 WL 2897854 (S.D.W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Corr. Med. Servs.*, Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D.W. Va., Dec. 18, 2008) (Faber, J. unpublished); *Howell v. Evans*, 922 F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services, Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997).  As noted by Aramark, the liability of a private corporation under § 1983 is analogous to municipal liability as set forth in *Monell, supra*, 436 U.S. 658 (1978).  *See, e.g., Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) ("In [*Monell*,] the Supreme Court held that a municipal corporation cannot be saddled with section 1983 liability via respondeat superior alone.  We see this holding as equally applicable to the liability of private corporations.").  (ECF No. 25 at 9).

Thus, a plaintiff must adhere to this "strict fact-pleading requirement[], and sufficiently plead facts, which if true, establish the existence of a corporate policy or custom that allegedly caused injury to the plaintiff and "a single instance of the

7

complained-of conduct is insufficient to establish that the conduct was undertaken pursuant to policy." *Revene v. Charles Cty. Comm'rs.*, 882 F.2d 870, 875 (4th Cir. 1989); *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Aramark's brief asserts:

> Setting aside for the moment the question of whether the Plaintiff has sufficiently pleaded the violation of a constitutional right, it is clear that the Plaintiff has not stated any facts that would support the existence or execution of an unconstitutional policy or custom on the part of Aramark. In fact, the Complaint does not allege any policy or custom on the part of Aramark whatsoever. Liability "will attach only for those policies or customs having a 'specific deficiency or deficiencies . . . such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run' . . . The challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (citations omitted) (emphasis and first omission in original). *Cf. Bland v. Rubenstein*, 2012 U.S. Dist. LEXIS 186571 at *37038 (N.D. W. Va. 2012). In the absence of any specific factual allegation whatsoever, Plaintiff has failed to state a cognizable § 1983 claim for relief against Aramark, and such claim should be dismissed.

(ECF No. 25 at 9-10).

Plaintiff responded to Aramark's motion (ECF No. 28) and also filed an unauthorized sur-reply (ECF No. 30). In those documents, Plaintiff attempts to specifically assert, for the first time, that Aramark knowingly violated various "Federal Health Care Laws" or "ergonomic standards" concerning safety, hygiene, and sanitation in the food service industry. (ECF No. 28 at 3-4, 6-8; ECF No. 30 at 4-7 and ECF No. 30-3, Ex. 2). Plaintiff further suggests that he needs responses to discovery requests that he had served on Defendant Aramark when he filed his complaint to "clarify" and support his allegations. (ECF No. 28 at 2-3, 7; ECF No. 30 at 2). However, Plaintiff's complaint

itself, contains no such allegations of any policy or custom of Aramark that allegedly led to a violation of Plaintiff's constitutional rights on this basis.[2]

Additionally, Plaintiff's response documents largely assert that Aramark had a "supervisory duty" to make sure that its facility met minimum sanitary levels and "knew or should have known" that Hill was not implementing proper standards at CCCJ and did not carry out its "supervisory responsibilities." (ECF No. 28 at 3-4, 10-11).[3]    However, those assertions, which were not specifically alleged in the complaint, are also far too conclusory and insufficient to establish a policy or custom of Aramark to hold it liable under § 1983.  At best, with respect to Aramark, Plaintiff's response summarily asserts that "Aramark is [liable] for failure to execute policies and customs, which would have protected the plaintiff from constitutional injury." (*Id.* at 11).  This speculative and conclusory statement is not sufficient to give rise to a policy or custom claim against Aramark.

Nor, as alleged by Aramark's brief, does the complaint allege any actual injury Plaintiff suffered. (ECF No. 25 at 9, citing *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th

---

[2]  As noted above, review on a motion to dismiss is limited to the "well-pleaded" factual allegations contained in the complaint, which are taken as true. *Iqbal*, 556 U.S. at 678-79.  Accordingly, there is no need for discovery, which has been stayed herein, and the court should not consider new allegations or facts alleged for the first time in response to a motion to dismiss. *See, e.g., Clement v. Spartanburg Steel Prod., Inc.*, No. 7:22-cv-173-MGL-KFM, 2022 WL 19266406, at *4 (D.S.C. Dec. 2, 2022), *report and recommendation adopted*, 2023 WL 2655183 (D.S.C. Mar. 27, 2023); *Adams v. 3D Sys., Inc.*, No. 0:19-cv-663-JMC, 2020 WL 1283712, at *2 (D.S.C. Mar. 18, 2020) ("[I]n ruling on a motion to dismiss under Rule 12(b)(6), the court may only look to the allegations of the complaint . . . [and] the Court will not consider any additional facts that were not alleged in the complaint.") (citations and internal quotation marks omitted); *Carroll v. United Parcel Serv., Inc.*, No. 1:17-cv-3108-DCC-JDA, 2018 WL 4126450, at *4 (D.S.C. Mar. 15, 2018) ("On a motion to dismiss, the Court will consider only the allegations included in Plaintiff's Complaint.") (internal citations omitted), *report and recommendation adopted in relevant part by* 2018 WL 4111017 (D.S.C. Aug. 29, 2018); *El Hadidi v. Intracoastal Land Sales, Inc.*, No. 4:12-cv-00535-RBH, 2013 WL 625575, at *3 n.3 (D.S.C. Feb. 20, 2013) ("The Court, however, in ruling on a motion to dismiss filed under Rule 12(b)(6), may only look to the allegations of the complaint.")  Accordingly, the undersigned will disregard these new assertions in Plaintiff's response documents.
[3]  Much of the authority upon which Plaintiff relies in his response briefs addresses supervisory liability claims against individual supervisory defendants, which is not applicable to Aramark as a corporate defendant.

Cir. 1993) ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment.")).  Thus, to the extent that Plaintiff has named Aramark as a defendant herein, he fails to allege that any of its specific policies or customs led to his actual injury to support a violation of his constitutional rights by Aramark.  *See also, e.g., Talbert v. Corizon, Inc.*, 711 F. App'x 668, 670 (3d Cir. Oct. 16, 2017) (*Monell* policy and custom requirement also applies to retaliation claims under the First Amendment).

Moreover, as noted above, Aramark cannot be held vicariously liable for the conduct of its employees, like Defendant Hill here, under § 1983 pursuant to a theory of respondeat superior.  *See Austin, supra,* 195 F.3d at 727-28; *Powell, supra*, 678 F.2d at 506; *see also Davis v. Corizon Med. Servs.*, No. JKB-12-2051, 2013 WL 4507418, at *4 (D. Md. Aug. 22, 2013) ("a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated upon a theory of respondeat superior.")  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state a plausible claim for relief against Aramark.[4]

      B.     Failure to exhaust administrative remedies.

Aramark's motion to dismiss also argues that Plaintiff failed to properly exhaust the available administrative remedies concerning the First and Eighth Amendment claims asserted in his complaint.  (ECF No. 25 at 4-5). Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns

---

[4] Aramark's memorandum of law asserts additional arguments concerning the sufficiency of Plaintiff's First and Eighth Amendment claims which the undersigned finds unnecessary to address herein, considering the recommended dismissal of Aramark as a non-suable entity under § 1983.

about the 'ever-growing number of prison condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (*quoting Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners properly exhaust administrative remedies within the prison before filing a civil action. *Id.*; *see also* 42 U.S.C. § 1997e(a). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D.W. Va. Jan. 19, 2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been [fully] exhausted." W. Va. Code § 25-1A-2(c).

Exhaustion of administrative remedies is an affirmative defense which must be raised and demonstrated by the defendants, and a plaintiff is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Anderson, supra*, 407 F.3d at 681 (exhaustion of administrative remedies is an affirmative defense to be raised by defendant); *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007) (the burden of proof for failure to exhaust PLRA administrative remedies lies with the

11

defendant).  Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv10648, 2017 WL 4004579, at *3 (S.D.W. Va. 2017) (*citing Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).  If a plaintiff fails to exhaust available administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law on the corresponding claim.  *See Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 72604, at *2 (S.D.W. Va. Feb. 23, 2017).

As noted by Aramark's brief, "[o]nce raised as an affirmative defense, however, it becomes the prisoner's burden to demonstrate and prove that he has exhausted his administrative remedies."  (ECF No. 25 at 5, citing *West v. Emig*, No. 18-3806, 2019 WL5061417, at *2 (3d Cir. 2019), relying on *Jones, supra*, 549 U.S. at 216).  While "grievances are not required to rehearse the legal arguments and claims later asserted against the defendants in a lawsuit[,]" they are "expected to address the subject matter of [a prisoner's] potential claims."  *See Lowe v. Johnson*, No. 2:17-cv-02345, 2018 WL 4222829, at *8 (S.D.W. Va. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 4212416 (S.D.W. Va. Sept. 4, 2018) (citing *Griffen v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).

Plaintiff attached to his complaint a copy of a single grievance, No. 23-CCCJ-D-21. (ECF No. 1-1 at 3, Ex. B).  That grievance, which was filed on July 18, 2023, states as follows:

> In the first week of June of 2023, I arrived at CCC and I was advised to work in the kitchen for my community service.  I worked there for a period of 3 days and the Aramark Supervisor Britany treated me in a manner of which can be explained by the video footage on that day treated me with indifference to other inmates of white color when I pointed it out she fired me.  Since firing me meant re-doing community service, I will need

> compensation of the wages I make in a month is $35750 plus damages &
> suit [illegible] ($1250.00).

(*Id*.).  A careful review of this grievance suggests that it was properly exhausted through all three levels of the WVDCR grievance process, as the initial response by the Unit Manager was timely affirmed by both the Superintendent and the Commissioner.[5]

Nonetheless, as asserted by Aramark, this grievance did not in any way mention "the conditions of the floor in the kitchen area" or "the issue of unhygienic plates and utensils" as alleged in the complaint.  (ECF No. 25 at 4).  Thus, Aramark contends that "to the extent that Plaintiff's Complaint contains claims based on the slippery conditions of the kitchen floor and unhygienic plates and utensils, those claims should be dismissed for Plaintiff's failure to exhaust administrative remedies prior to filing suit."  (*Id*.)

Moreover, although Plaintiff's grievance complains about being treated poorly and being fired by Defendant Hill, he characterizes that treatment as being based on his race and not his alleged complaints about the conditions in the kitchen.  Thus, there is no factual support that Plaintiff fully and properly grieved the actual issues that give rise to either his Eighth Amendment unsafe conditions claim, or his First Amendment retaliation claim, through that grievance.  Nor has Plaintiff, in the face of Aramark's raising of this affirmative defense and having the opportunity to respond, offered any other grievances in which he allegedly addressed those relevant issues.[6]  Accordingly, the

---

[5] The undersigned notes that, although the Superintendent checked the line for rejecting the grievance, he or she went on to "affirm" the decision.  Thus, it appears that the "rejection" line was inadvertently checked in error.  (ECF No. 1-1 at 3, Ex. B).

[6] As it is apparent on the face of the complaint and this incorporated grievance that Plaintiff did not properly exhaust the available administrative remedies concerning his instant First and Eighth Amendment claims, the undersigned proposes that the presiding District Judge also dismiss these claims against Defendant Britany Hill, even though she has not been served with process and made an appearance herein.  *See Custis v. Davis*, 851 F.3d 358, 362 (4th Cir. 2017) ("a court may sua sponte dismiss an inmate's complaint for failure to exhaust administrative remedies [] when the court has given the inmate an opportunity to address or respond to the alleged failure to exhaust.")

undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint should be dismissed, in its entirety, for failure to properly exhaust available administrative remedies.

      C.     Plaintiff's claims for declaratory and injunctive relief are moot.

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy. U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue." *Taylor v. Riverside Reg'l Jail Auth.*, No. 3:11-cv-00456, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack,* 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  Without such case or controversy, the court lacks subject matter jurisdiction over the subject claim(s). Pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, "if the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

When Plaintiff filed his complaint, he alleged violations of his federal constitutional rights which are actionable under 42 U.S.C. § 1983 and, thus, appear to satisfy the court's "federal question" jurisdictional requirements under 28 U.S.C. § 1331. However, as noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular

prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.")  As noted above, Plaintiff was released from CCCJ and ultimately from incarceration altogether and, thus, the court now lacks jurisdiction to grant declaratory or injunctive relief against the named defendants.  Thus, the undesigned proposes that the presiding District Judge **FIND** that Plaintiff's claims for declaratory and injunctive relief must be dismissed as moot.

### IV.    RECOMMENDATION

For all the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Aramark's Motion to Dismiss (ECF No. 24) and **DISMISS** Plaintiff's Complaint (ECF No. 1) and this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(C), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.  Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir.

1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff, and to transmit a copy to counsel of record.

July 2, 2024

Dwane L. Tinsley
United States Magistrate Judge